**ANDREW RAUCH, APC**
A Professional Law Corporation
Andrew K. Rauch, Esq. (SBN 137657)
110 West C Street, Suite 2200
San Diego, CA 92101
Phone: (619) 515-1140
Facsimile: (619) 235-9100

Attorneys for Plaintiff, David Firooz,

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID FIROOZ,** | Case No.:  **'17 CV 0867 WQH NLS** |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES** |
| **v.** | **(Jury Trial Requested)** |
| **TAKATA CORPORATION, TK HOLDINGS INC., TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., PREMIER AUTOMOTIVE OF CA, LLC, ANDRES LIERA VALENZUELA, and DOES 1-100,  Inclusive,** | |
| **Defendants.** | |

_____

Plaintiff, DAVID FIROOZ ("Mr. Firooz" or "Plaintiff"), by and through the undersigned Counsel of Record and pursuant to the Federal Rules of Civil Procedure, and files this Complaint for Damages against Defendants Takata Corporation, TK Holdings Inc., Toyota Motor Company,

Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Premier Automotive Of CA, LLC, Andres Liera Valenzuela, and Does 1-100, inclusive, (hereinafter collectively the "Defendants"), showing the Court as follows:

## NATURE OF THE ACTION

1.     This is a civil action arising out of serious, permanent, life scarring and post-crash personal injuries sustained by Plaintiff David Firooz, following a foreseeable automobile collision on April 23, 2015 (hereinafter "the Incident").

2.     During the Incident, the driver's side Takata airbag inflator in Plaintiff's 2007 Toyota Automobile, Vehicle Identification Number ("VIN") 1NXBR30E47Z803534 (hereinafter "the Subject Vehicle"), deployed in an unexpected, overly aggressive manner, violently rupturing the airbag and expelling shrapnel into Mr. Firooz's body.

3.     Mr. Firooz suffered severe injuries in the Incident and was hospitalized since the Incident rendered him incapable of caring for his property or transacting business, or understanding the nature or effects of his acts up to at least May 6, 2015 when he was transferred from critical care to rehabilitative care.

4.     Mr. Firooz brings this automotive products liability and personal injury action for his damages sustained, including, but not limited to pain, suffering, permanent disfigurement and scarring, and loss of enjoyment of life, as well as for punitive damages.

5.     This products liability action includes claims for general negligence, gross negligence, and reckless conduct.

6.      The claims asserted include and herein arise out of the Defendants' faulty design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution, and sale of an uncrashworthy, defective, and unreasonably dangerous automobile and automobile airbag system.

7.     This personal injury action also includes claims against Defendant, Andres Liera Valenzuela regarding his negligent and/or wrongful operation of his vehicle.

## PARTIES

8.     At all times relevant herein, Plaintiff David Firooz is and was a citizen and resident of the County of San Diego, State of California, and residing at 337 Puerta de Lomas, Fallbrook, California 92028.

9.     At all times relevant herein, Defendant Takata Corporation ("Takata") is and was a foreign for-profit corporation organized and existing under the laws of Japan with its principal place of business at ARK Hills South Tower 4-5 Roppongi 1-Chome, Minato-ku, Tokyo, 106-8488, Japan. Takata is a specialized supplier of automotive safety systems, that designs, manufactures, assembles, tests, markets, distributes, and sells vehicle restraint systems to various Original Equipment Manufacturers ("OEM's"), including Toyota, in the United States and abroad, including specifically the airbag incorporated and used by Toyota in its airbag safety system in the Subject Vehicle. Takata is a vertically-integrated company and manufactures component parts in its own facilities, and then distributes same.

10.     At all times relevant herein, Defendant TK Holdings Inc. ("TK Holdings") is and was a Delaware corporation and subsidiary and/or operational unit of Takata, headquartered in Auburn Hills, Michigan, with its principal place of business at 2500 Takata Drive, Auburn Hills, Michigan 48326. TK Holdings is in the business of designing, manufacturing, assembling, testing, promoting, advertising, distributing and selling vehicle restraint systems to various OEM's, including Toyota, including the airbag incorporated and used by Toyota in its airbag safety system in the Subject Vehicle. Additionally, TK Holdings has also been identified in various materials as manufacturing the "inflators" in the frontal airbag systems that are rupturing or exploding with unreasonably dangerous, excessive concussive force and which in many instances have injured vehicle occupants with shrapnel or concussive impacts, as well as the "propellant" or explosive charge used within the inflator itself. TK Holdings also is involved in the distribution of such airbag systems to OEM's, including Toyota.

11.     Defendants Takata and TK Holdings are hereinafter collectively referred to as "Takata" or the "Takata Defendants." Takata is the manufacturer of the defective driver's side airbag

in the Subject Vehicle, which exploded violently and with overly aggressive force, on October 24, 2014, and was recalled subsequent to the Incident which forms the subject matter of this litigation.

12.     At all times relevant herein, Defendant Toyota Motor Co. ("Toyota") is and was a foreign for-profit corporation organized and existing under the laws of Japan with its principal place of business at 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan. Toyota manufactures and sells automobiles in the United States, Canada, and Mexico containing airbags manufactured by the Takata Defendants, including the Subject Vehicle at issue in this Complaint.

13.     At all times relevant herein, Defendant Toyota Motor North America, Inc. ("Toyota NA") is and was a domestic for-profit corporation with its principal place of business at 9 West 57th Street, Suite 4900, New York, New York 10019. Toyota NA is a wholly-owned subsidiary of Toyota Motor Corporation, and a holding company of sales and manufacturing subsidiaries of Toyota Motor Corporation in the Unites States.

14.     At all times relevant herein, Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota U.S.A") is and was a domestic for-profit corporation with its principal place of business at 19001 South Western Avenue, Department WC11, Torrance, California 90501. Toyota U.S.A. is a wholly-owned subsidiary of Toyota Motor Corporation and is responsible for the marketing, sales, and distribution in the United States of automobiles manufactured by Toyota Motor Corporation.

15.     At all times relevant herein, Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is and was a domestic for-profit corporation with its principal place of business at 25 Atlantic Avenue, Erlanger, KY 41018. TEMA is a subsidiary of Toyota Motor Corporation responsible for engineering design and development, research and development, and manufacturing activities in the U.S., Mexico, and Canada.

16.     At all times relevant herein, Premier Automotive of CA, LLC ("Premier") is and was a domestic for profit company operating in the State of California as a Limited Liability Company

with its principal place of business at 13631 Poway Road, Poway, California.  Premier Automotive of CA, LLC operates under the trade name as "Toyota of Poway" and holds itself out as a business that conducts safety inspections of Toyota automobiles.  Toyota of Poway operates in the County of San Diego and within this judicial district.  On June 28, 2012, Premier inspected the Subject Vehicle at the request of the Plaintiff.  In exchange for monetary compensation from the Plaintiff, Premier conducted a safety and maintenance inspection of the Subject Vehicle.  After concluding its inspection, Premier falsely represented to Plaintiff that the vehicle was safe to drive and that it was free of defects.

17.     Defendants Toyota, Toyota NA, Toyota U.S.A., TEMA, and Premier Automotive of CA, LLC are collectively referred to as "Toyota" or "Toyota Defendants." Toyota vehicles sold in the United States contain airbags manufactured by the Takata Defendants. The Toyota Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States. Defendants inspect and maintain these Toyota vehicles in which the airbags were installed.

18.     NHTSA has recalled millions of Toyota vehicles for having faulty Takata airbags, including the Subject Vehicle at issue in this Complaint.[1]  Upon information and belief, the Toyota  Defendant is directly responsible for Mr. Firooz's injuries and damages, which were caused  by the defective inflator incorporated into the airbag safety system in the Subject Vehicle that exploded, on April 23, 2015, with inappropriately violent and overly aggressive force, and resulted in the injuries and damages sought herein. Also upon information and belief, there are hundreds if not thousands of vehicles, potentially containing defective Takata airbag inflators, still remaining on the roadways today that Toyota has affirmatively and knowingly failed to recall in a timely and appropriate manner, including but not limited to the Subject Vehicle at issue in this Complaint.

19.     At all times relevant, Andres Liera Valenzuela (date of birth July 18, 1989) was the operator of a Toyota motor vehicle which struck the vehicle in which the Plaintiff occupied.

---

[1] NHTSA Recall Number 15V284 (May 13, 2015).

**COMPLAINT FOR DAMAGES**

Said Defendant is also referred to herein as "Liera."

20.     Plaintiff is informed and believes and thereon alleges that at all times relevant to this Complaint, Does 1 through 100 were each acting as the representative, employee, agent or partner of the Defendants, and each of them, and in doing things alleged herein each was acting within the course and scope of his/her authority as such representative, employee, agent or partner, and with consent and authorization of Defendants, and each of them. In addition, Plaintiff alleges on information and belief that Doe defendants also engaged, directed, hired and paid others to perform the wrongful acts alleged herein.

## JURISDICTION AND VENUE

21.     Jurisdiction is proper in this court as Plaintiff is a resident of the Southern District of California.

22.     By filing this Complaint in this District, however, Plaintiff does not waive his right to transfer this case to the District where the cause of action arose or in which he resides at the conclusion of pretrial proceedings.

23.     This Honorable Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

24.     Jurisdiction over Defendant Takata Corporation is proper under due process clauses of the Fifth and Fourteenth Amendments to Constitution of the United States of America and under the California Long-Arm Statute, California Code of Civil Procedure §410.10, as Defendant Takata Corporation, *inter alia*, regularly transacted, engaged in and derived revenue from business operations, including the sale automotive products and related components, in California;  it contracted to supply automotive products and related components in California; it caused injuries and damages to the Plaintiff due to acts and/or omissions which occurred in whole or in part within California; and it manufactured automotive products and components thereto, and placed those products and components into the stream of commerce, with actual or

constructive knowledge that those automotive products and related components would be eventually be found in California.

25.     Jurisdiction over Defendant TK Holdings is proper under due process clauses of the Fifth and Fourteenth Amendments to Constitution of the United States of America and under the California Long-Arm Statute, California Code of Civil Procedure §410.10, as Defendant TK Holdings, *inter alia*, regularly transacted, engaged in and derived revenue from business operations, including the sale automotive products and related components, in California;  it contracted to supply automotive products and related components in California; it caused injuries and damages to the Plaintiff due to acts and/or omissions which occurred in whole or in part within California; and it manufactured automotive products and components thereto, and placed those products and components into the stream of commerce, with actual or constructive knowledge that those automotive products and related components would be eventually be found in California.

26.     Jurisdiction over Defendant Toyota Motor Company is proper under due process clauses of the Fifth and Fourteenth Amendments to Constitution of the United States of America and under the California Long-Arm Statute, California Code of Civil Procedure §410.10, as Defendant Toyota Motor Company, *inter alia*, regularly transacted, engaged in and derived revenue from business operations, including the sale automotive products and related components, in California;  it contracted to supply automotive products and related components in California; it caused injuries and damages to the Plaintiff due to acts and/or omissions which occurred in whole or in part within California; and it manufactured automotive products and components thereto, and placed those products and components into the stream of commerce, with actual or constructive knowledge that those automotive products and related components would be eventually be found in California.

27.     Jurisdiction over Defendant Toyota Motor North America, Inc. is proper under due process clauses of the Fifth and Fourteenth Amendments to Constitution of the United States of America and under the California Long-Arm Statute, California Code of Civil Procedure

§410.10, as Defendant Toyota Motor North America, Inc., *inter alia*, regularly transacted, engaged in and derived revenue from business operations, including the sale automotive products and related components, in California; it contracted to supply automotive products and related components in California; it caused injuries and damages to the Plaintiff due to acts and/or omissions which occurred in whole or in part within California; and it manufactured automotive products and components thereto, and placed those products and components into the stream of commerce, with actual or constructive knowledge that those automotive products and related components would be eventually be found in California.

28. Jurisdiction over Defendant Toyota Motor Sales, U.S.A., Inc. is proper under due process clauses of the Fifth and Fourteenth Amendments to Constitution of the United States of America and under the California Long-Arm Statute, California Code of Civil Procedure §410.10, as Defendant Toyota Motor Sales, U.S.A., Inc., *inter alia*, regularly transacted, engaged in and derived revenue from business operations, including the sale automotive products and related components, in California; it contracted to supply automotive products and related components in California; it caused injuries and damages to the Plaintiff due to acts and/or omissions which occurred in whole or in part within California; and it manufactured automotive products and components thereto, and placed those products and components into the stream of commerce, with actual or constructive knowledge that those automotive products and related components would be eventually be found in California.

29. Jurisdiction over Defendant Toyota Motor Engineering & Manufacturing North America, Inc. is proper under due process clauses of the Fifth and Fourteenth Amendments to Constitution of the United States of America and under the California Long-Arm Statute, California Code of Civil Procedure §410.10, as Defendant Toyota Motor Engineering & Manufacturing North America, Inc., *inter alia*, regularly transacted, engaged in and derived revenue from business operations, including the sale automotive products and related components, in California; it contracted to supply automotive products and related components in California; it caused injuries and damages to the Plaintiff due to acts and/or omissions which occurred in whole or in

part within California; and it manufactured automotive products and components thereto, and placed those products and components into the stream of commerce, with actual or constructive knowledge that those automotive products and related components would be eventually be found in California.

30.     Jurisdiction over Premier Automotive of CA, LLC in proper as this Defendant has its principal place of business within this judicial District and provided services to Plaintiff here.

31.     Venue is proper in this District under 28 U.S.C. § 1391 because all of the Defendants, as corporate entities, are deemed to reside in any judicial district in which they are subject to personal jurisdiction.  Additionally, some of the events establishing the claims arose in this District.

32.     Additionally, venue is proper as the Plaintiff was a victim of the wrongdoing of others and Plaintiff is a resident of this judicial district.

## THE INCIDENT

33.     On April 23, 2015, Mr. Firooz was operating the Subject Vehicle in accordance with all applicable laws when the Subject Vehicle was struck by another vehicle driven by defendant, Andres Liera Valenzuela.  Thus, Plaintiff was involved in a foreseeable crash (hereinafter the "Incident").

34.     At the time of, and immediately before, the Incident, Mr. Firooz was the sole occupant of the Subject Vehicle, he was unimpaired, and properly wearing his seatbelt.

35.     During the Incident, the Subject Vehicle made impact with the other vehicle. This was a foreseeable collision event arising out of ordinary use of the Subject Vehicle at the time.

36.     During the Incident, the Subject Vehicle's driver's side front airbag inflator deployed with such excessive internal pressure such that the metal inflator canister ruptured which propelled flying shrapnel toward Mr. Firooz's head and face. The shrapnel and the ineffective airbag deployment caused by the rupture of the inflator caused Mr. Firooz's post-crash enhanced injures. The rupture of the inflator metal canister caused sharp and hot pieces of metal shrapnel to be expelled into and onto Mr. Firooz resulting in serious injuries, including, but not limited to,

severe lacerations to his head.

37.     Subsequently, since the time of the Incident, the Subject Vehicle has been recalled as a result of defects in the Subject Vehicle's driver's side frontal airbag system, which existed at the time the Subject Vehicle was placed into the stream of commerce, and at the time of the Incident, and about which the Defendants did have prior knowledge before the date on which the Incident occurred.[2]

38.     The injuries sustained by Mr. Firooz related to the airbag, as described more fully herein, would not have occurred but for the defects present in the Subject Vehicle and its component parts on April 23, 2015, as those defects prevented a normal, safe, and expected airbag deployment in the Subject Vehicle at the time of the Incident and caused the frontal airbags to deploy with overly excessive force to expel shrapnel and directly and seriously injure Mr. Firooz.

39.     Accordingly, as a result of the defective and unreasonably dangerous condition of the Subject Vehicle at the time the Incident, on April 23, 2015, Mr. Firooz has suffered the severe and permanent injuries for which he now brings suit.

## STATEMENT OF FACTS

40.     The Subject Vehicle was designed, manufactured, assembled, inspected, tested, equipped, marketed, and distributed by the Defendants.

41.     The Takata Defendants substantially participated in the design and integration of the driver's side airbag module into the Subject Vehicle.

42.     As originally designed, manufactured, assembled, inspected, tested, equipped, marketed, and distributed, the Subject Vehicle contained a driver's side airbag module supplied to Toyota by the Takata Defendants.

43.     As originally designed, manufactured, assembled, inspected, tested, equipped, marketed and distributed, the Subject Vehicle's Takata-supplied driver's side airbag module contained a component known as an inflator.

---

[2] *See* NHTSA Recall Number 15V284 (May 13, 2015).

44.     As originally designed, manufactured, assembled, inspected, tested, equipped, marketed



and distributed, the Subject Vehicle's Takata-supplied driver's side airbag module contained a

specific inflator designated by the Takata Defendants, and known to Toyota, as a Programmable

Smokeless Drivers Inflator or PSDI.

45.     The PSDI is a two stage inflator which utilizes Takata's 2004 Propellant. The 2004

Propellant is comprised of Phase Stabilized Ammonium Nitrate (PSAN) pressed into what

Takata refers to as "Batwings." The two stage design allows the inflator output to be varied

according to the severity of the crash.

46.     As originally designed, manufactured, assembled, inspected, tested, equipped, marketed

and distributed, the Subject Vehicle's Takata-supplied driver's side airbag module contained a

PSDI inflator which was in a defective condition and was unreasonably dangerous to

foreseeable users and consumers of the Subject Vehicle.

47.     At the time of the Incident, upon information and belief, the component sub-assemblies

in the Subject Vehicle were in the same essential condition as they were at the time it left the

Defendants' control.

48.     Subsequently, since the time of the Incident, the Subject Vehicle has been recalled as a

result of defects in the Subject Vehicle's driver's frontal airbag system, which existed at the time of the Incident and about which the Defendants did have prior knowledge before the date on which the Incident occurred.

49.     The injuries sustained by Mr. Firooz, as described herein, would not have occurred but for the defects present in the Subject Vehicle and its component parts when it entered the stream of commerce and at the time of the Incident on April 23, 2015, as those defects prevented a normal, safe, and expected airbag deployment in the Subject Vehicle at the time of the collision and caused the frontal airbags to deploy with overly excessive force to directly and seriously injure the Plaintiff Mr. Firooz.

50.     The Subject Vehicle was designed, developed, manufactured, tested, marketed, distributed, and sold by Toyota.  At the time of the Incident, the component sub-assemblies in the Subject Vehicle were in the same essential condition as they were at the time it left the Toyota Defendant's control.

51.     Upon information and belief, the Incident and Mr. Firooz's injuries occurred as a result of defects in the Subject Vehicle's frontal, driver's side airbag system, which existed at the time of the Incident, and about which the Defendants knew or should have known.

52.     The injuries sustained by Mr. Firooz, as described herein, would not have occurred and/or would not have been so severe, but for the defects present in the Subject Vehicle and its component parts on April 23, 2015, as those defects prevented a normal, safe, and expected airbag deployment in the Subject Vehicle at the time of the collision and caused the frontal, driver's side airbag to deploy with overly excessive force against Mr. Firooz in the face and head, causing severe lacerations thereto.

53.     Consequently, as a result of the defective and unreasonably dangerous condition of the Subject Vehicle at the time of the Incident on April 23, 2015, Mr. Firooz has suffered the severe and permanent injuries for which he now brings suit.

## AGGRAVATING CIRCUMSTANCES

54.     Airbags are a critical component in the safety features of virtually every motor vehicle

sold in the United States and throughout the world. Currently, over 30,000 people are killed in motor vehicle accidents each year in the United States.  Remarkably, that number is nearly half of what it was in 1966, when over 50,000 Americans died in car crashes. The drastic reduction is, in large part, due to tremendous advances in vehicle occupant safety, including the widespread use of seatbelts and airbags.

55.     In order to prevent serious injury and death resulting from bodily impact with the hard interior surfaces of automobiles, like windshields, steering columns, dashboards, and pillars, upon a vehicle experiencing a specified change in velocity in a collision, accelerometers and sensors in the vehicle frame trigger the vehicle airbags to deploy. Because collisions can occur at rates of speed that can cause serious injury, to be effective, airbags must deploy timely and at appropriate velocity to be effective, but not subject the occupant to additional unnecessary harm. To accomplish this, the airbag system is through highly conductive metals, such as gold, and the airbag systems use small explosive charges to immediately inflate the airbags upon being triggered.

56.     Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983.  Airbags made up 37.3% of Takata's automotive safety products business in 2007.  Takata also develops other safety technologies, including cushions and inflators, which  are components of Takata-manufactured airbags.

57.     This case flows directly from the now admitted fact that Takata's explosive charge components in its airbag systems were defectively manufactured, since as early as 2001, and perhaps earlier, and deliberately and continuously placed into the stream-of-commerce by Takata, despite repeated and known reports of injuries and deaths to the consumer public caused by their products.

58.     More specifically, the airbags at issue in this case were developed by Takata in the late 1990s in an effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted  when deployed. The redesigned airbags are inflated by means of an

explosive based on a common compound used in fertilizer. That explosive is encased in a metal canister.

59.     Takata has, since at least 2007, claimed to prioritize driver safety as its "dream."[3] Based on that "dream," they claimed to be "motivated by the preciousness of life" and pledged to both "communicate openly and effectively."[4] Takata has failed to live up to that dream, however, by manufacturing, distributing, and selling airbags that can cause serious bodily injury or death since that time.

60.     Airbags are meant to inflate timely during an automobile collision but with only such force necessary to cushion the occupant from impact to the vehicle's interior and not cause additional enhanced injury. When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe. The defective vehicles contain airbags manufactured by Defendant Takata that, instead of protecting vehicle occupants from bodily injury during accidents, violently explode using excessive force, and in many incidents, expel lethal amounts of metal debris and shrapnel at vehicle occupants.

61.     More specifically, rather than deploying the airbags to prevent injuries, the defective Takata airbag inflators quite literally blow up like hand-grenades, sending lethal metal and plastic shrapnel into the vehicle cockpit and into the bodies of the drivers and passengers. In fact, in one otherwise non-catastrophic collision, responding police opened a homicide investigation because it appeared that the deceased driver had been stabled multiple times in the head and neck immediately before crashing her car. In truth and fact, the defective Takata airbag had exploded and killed the driver by sending metal and plastic fragments into her body.

62.     Takata knew of the deadly airbag defect at least 13 years ago, but did nothing to prevent ongoing injury and loss of life. Takata's first airbag defect recall stemmed from defective manufacturing in 2000, but was limited (by Takata) to a recall of select Isuzu vehicles. In

---

[3] Takata Company Investor's Meeting Presentation- Investment Highlights, FY2007, at 3.
[4] *Id.*

Alabama, in 2004, a Takata airbag in a Honda Accord exploded, shooting out metal fragments which gravely injured the driver. Honda and Takata unilaterally deemed it "an anomaly" and did not issue a recall, adequately investigate it themselves, or seek the involvement of federal safety regulators. Instead, they brushed it under the rug: Takata kept making defective airbags; and Toyota, like Honda, kept putting them in its vehicles while marketing them as highly safe and of high quality.

63.     Further, prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, and/or selling the Subject Vehicle, the Toyota Defendants knew that alternative driver's side frontal airbag system designs existed, that they were safer, more practical and both technologically and economically feasible for inclusion in the Subject Vehicle, and they were aware that those alternative designs would have eliminated the defective and unsafe characteristics of the Subject Vehicle without impairing its usefulness or making it too expensive, yet they failed to make the necessary changes to make their products safe.

64.     Also, despite the shocking records of injuries, like this one, and deaths caused by Takata products dating back to at least 2004, the Defendants were slow to report the full extent of the danger to drivers and passengers which existed, and failed to issue appropriate, timely recalls to keep its car buyers safe.

65.     As a result, during the Incident involved and at issue in this Complaint, the Subject Vehicle contained a driver's side airbag manufactured by the Takata Defendants that, instead of protecting vehicle occupants from bodily injury during accidents, violently exploded, with excessive force, and caused extensive physical injuries and damages to Mr. Firooz.

66.     An automotive component supplier that manufactures and sells airbags in automobiles and vehicle manufacturers must take all necessary steps to ensure that its products—which can literally mean the difference between life and death in an accident—function as designed, specified, promised, and intended. Profits *must* take a back seat to safety for the airbag manufacturer and the automobile manufacturer in making its product sourcing decisions. Yet

Takata and Toyota BOTH put profits ahead of safety. Takata cut corners to build cheaper airbags, and Toyota bought its airbags from Takata to save money. The result is that instead of saving lives, faulty Takata airbags in Toyota automobiles are killing and maiming drivers and passengers, like Plaintiff David Firooz, involved in otherwise minor and survivable accidents.

67.     Even more alarming, rather than take the issue head-on and immediately do everything in their power to prevent further injury and loss of life, they have engaged in a pattern of deception and obfuscation, only very recently beginning a partial recall of affected vehicles. Indeed, the danger of exploding airbags and the number of vehicles affected was not disclosed for years after it became apparent there was a potentially lethal problem. Instead, Takata and Toyota repeatedly failed to fully investigate the problem and issue proper recalls, allowing the problem to proliferate and cause numerous injuries and deaths over the last 13 years. They, also, have continued provided contradictory and inconsistent explanations to regulators for the defects in Takata's airbags, leading to more confusion and delay.

68.     It was not until 2013 that a more detailed recounting of Takata's safety failures was revealed. In fact, it was not until April of that year that, in a 2013 Report, Takata finally admitted that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, and BMW.[5] Also in that Report, Takata asserted that it did not know how many inflators were installed in vehicles, as it did not have those records.[6] While it did not have the information to estimate the number of vehicles affected, Takata still insisted that the total number of installed inflators would be extremely low.[7]

69.     To date, over 20 million vehicles with Takata's airbags have been recalled worldwide, and there are reports that additional vehicles that have not yet been disclosed by the Defendants

---

[5] *See* Takata's Defect Information Report titled, "Certain Airbag Inflators Used as Original Equipment," dated April 22, 2013, at 2-3.
[6] *Id.*
[7] *See id.*

could join the list of recalls. The large majority of those recalls have come only within the last year despite the fact that many of the vehicles were manufactured with a potentially defective and dangerous airbag over a decade ago.

70.     The full scope of the defects, however, still has yet to be determined. More information about Takata's defective airbags continues to be uncovered today, and upon information and belief, there are thousands of Toyota drivers, passengers, and vehicle owners and operators that still remain at risk today due to the un-recalled defective vehicles still on the road.

71.     U.S. federal prosecutors have taken notice of Takata's failure to properly report the problem with its airbags and are trying to determine whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers.

72.     Takata and Toyota knew or should have known that the Takata airbags installed in millions of vehicles, including the Subject Vehicle, were defective. And both Takata and Toyota, who concealed their knowledge of the nature and extent of the defects from the public, have shown a blatant disregard for public welfare and safety.

## CONDITIONS PRECEDENT

73.     All conditions precedent to the bringing of this action and Plaintiff's rights to the relief sought herein have occurred, have been performed, or have been excused.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### Negligence, Gross Negligence, Willful and Wanton Conduct:
### Design Defect as to All Defendants

74.     Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

75.     At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA selected, designed, manufactured, assembled, inspected, tested, equipped, marketed, distributed, and sold the Subject Vehicle and its components,

including but not limited to, equipping it with its driver's frontal airbag system.

76. At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA designed the Subject Vehicle and its driver's frontal airbag system, and each Defendant owed Plaintiff a duty of reasonable care to select, design, manufacture, assemble, inspect, test, equip, market, distribute, and sell the Subject Vehicle and its components, including the driver's frontal airbag system, so that it would provide a reasonable degree of occupant protection and safety during foreseeable collisions occurring in the real world highway environment of its expected use.

77. At all times relevant herein, as selected, designed, manufactured, assembled, inspected, tested, equipped, marketed, distributed, and sold by Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, the Subject Vehicle is and was uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its driver's frontal airbag system is and was inadequately designed and constructed, and failed to provide the degree of occupant protection, and safety a reasonable consumer would expect in foreseeable accidents occurring in the real world environment of its expected use.

78. At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless, and careless in the design of the Subject Vehicle and breached their duties of care owed to Plaintiff by:

    a. failing to adopt and implement adequate safety hierarchy procedures and policies;

    b. failing to design, manufacture, test, assemble and/or install the driver's airbag system so as to prevent it from having excessively energetic propellant, deploying with excessive force, and/or from expelling shrapnel in foreseeable collisions to kill or injure drivers or passengers upon air bag deployment during the same;

    c. failing to design, test, assemble and/or install the driver's airbag system so that it was properly vented and would adequately deflate under foreseeable impacts;

    d. failing to ensure that the Subject Vehicle was reasonably crashworthy;

    e.   failing to exercise reasonable care in the design of the Subject Vehicle and its driver's frontal airbag system;

    f.   failing to exercise reasonable care in the testing of the Subject Vehicle and its driver's frontal airbag system;

    g.   failing to exercise reasonable care in the inspection of the Subject Vehicle and its driver's frontal airbag system;

    h.   failing to adopt and implement adequate warnings regarding Subject Vehicle and its driver's frontal airbag system;

    i.   failing to incorporate appropriate quality assurance procedures in design of the Subject Vehicle and its driver's frontal airbag system;

    j.   designing and distributing the Subject Vehicle and its driver's frontal airbag system in a condition dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer; and

    k.   on such other and further particulars as the evidence may show.

79.    At all times relevant, as a direct and proximate result of Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA's negligence and the breaches complained of herein, Plaintiff has suffered serious and permanent injuries including scarring, excruciating pain and suffering, mental anguish, and emotional distress from the Incident on April 23, 2015.

80.    In addition to the general and special damages suffered by the Plaintiff and proximately caused by the Defendants bad actions and inactions, as it concerns the defective operations and performance of the Subject Vehicle on April 23, 2015, and as previously alleged and set forth in this Complaint, Plaintiff also, as a further result of Defendants' reckless, willful, negligent and grossly negligent conduct, is entitled to recover punitive damages in

accordance  with the law and evidence in this case in an amount to be determined at trial.

81.     More specifically, the actions and inactions of Defendants Takata,  TK  Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA were  of  such  a  character as to constitute a pattern or practice of willful, wanton and reckless misconduct and  caused serious and substantial harm to the Plaintiff, resulting in significant and ongoing damages  arising from the Incident at issue in this Complaint.

82.     Furthermore, Defendants Takata,  TK  Holdings,  Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA have acted with such a conscious and flagrant disregard for the rights and safety of the Plaintiff, and/or have deliberately engaged in willful, wanton and reckless  disregard for the life and safety of the Plaintiff so as to entitle them to punitive and exemplary damages in an amount sufficient to keep such wrongful conduct from being repeated.

83.     WHEREFORE, Plaintiff demands judgment against Defendants Takata,  TK  Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, jointly and severally,  for all  actual and  compensatory damages  suffered, proximately caused by the Defendants' conduct, including but not limited to

      a.  Past and future medical expenses and charges;

      b.  Past and future physical pain and mental anguish;

      c.  Past and future physical impairment;

      d.  Past and future disfigurement;

      e.  Past lost wages and future lost wage-earning capacity;

      f.  Reasonable and proper compensation for any and all property damages incurred;

      g.  Punitive damages in an  amount sufficient to keep such wrongful conduct from being repeated;

      h.   Interest, if applicable, for all costs of this action; a n d

      i.  For any other such further relief as this Honorable  Court and/or jury may deem just and proper.

      //

## SECOND CLAIM FOR RELIEF

## Negligence, Gross Negligence, Willful and Wanton Conduct: Manufacturing Defect As to All Defendants

84.     Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

85.     At all times relevant herein, all Defendants, Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, took part in and/or were responsible for the selection, design, manufacture, assemblage, inspection, testing, equipment, marketing, distribution, and/or sale of the Subject Vehicle and its component parts, including but not limited to its defective frontal airbag system, to Plaintiff at some point prior to the Incident on April 23, 2015.

86.     At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA manufactured the Subject Vehicle and its driver's frontal airbag system, and each Defendant owed Plaintiff a duty of reasonable care to select, design, manufacture, assemble, inspect, test, equip, market, distribute, and sell the Subject Vehicle and its components, including the driver's frontal airbag system, so that it would provide a reasonable degree of occupant protection and safety during foreseeable collisions occurring in the real world highway environment of its expected use.

87.     At all times relevant herein, as manufactured, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by Defendants, Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, the Subject Vehicle is and was uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its driver's frontal airbag system is inadequately designed and constructed, and failed to provide the degree of occupant protection, and safety a reasonable consumer would expect in foreseeable accidents occurring in the real world environment of its expected use.

88.     At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA each were collectively and respectively negligent, grossly

negligent, willful, wanton, reckless and careless and breached their duties of care owed to Plaintiff by:

 a. failing to adopt and implement adequate safety hierarchy procedures and policies;

 b. failing to manufacture, test, assemble and/or install the driver's airbag system so as to prevent it from having excessively energetic propellant, deploying with excessive force, and/or from expelling shrapnel in foreseeable collisions to kill or injure drivers or passengers upon air bag deployment during the same;

 c. failing to manufacture, test, assemble and/or install the driver's airbag system so that it was properly vented and would adequately deflate under foreseeable impacts;

 d. failing to ensure that the Subject Vehicle was reasonably crashworthy;

 e. failing to exercise reasonable care in the manufacture of the Subject Vehicle and its driver's frontal airbag system;

 f. failing to exercise reasonable care in the testing of the Subject Vehicle and its driver's frontal airbag system;

 g. failing to exercise reasonable care in the inspection of the Subject Vehicle and its driver's frontal airbag system;

 h. failing to adopt and implement adequate warnings regarding the Subject Vehicle and its driver's frontal airbag system;

 i. failing to incorporate appropriate quality assurance procedures in manufacture of the Subject Vehicle and its driver's frontal airbag system;

 j. manufacturing and distributing the Subject Vehicle and its driver's frontal airbag system in a condition dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer; and

 k. on such other and further particulars as the evidence may show.

89.     As a direct and proximate result of the Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA's negligence and the breaches complained of herein, Plaintiff suffered serious and permanent injuries including scarring, excruciating pain and suffering, mental anguish, and emotional distress from the Incident on April 23, 2015.

90.     By reason of the foregoing, Plaintiff is entitled to recover for all general and special damages he sustained as a direct and proximate result of Defendants' grossly negligent, reckless, willful and wanton acts or omissions.

91.     In addition to the general and special damages suffered by the Plaintiff and proximately caused by the Defendants bad actions and inactions, as it concerns the defective operations and performance of the Subject Vehicle on April 23, 2015, and as previously alleged and set forth in this Complaint, Plaintiff also, as a further result of Defendants' reckless, willful, negligent and grossly negligent conduct, is entitled to recover punitive damages in accordance with the law and evidence in this case in an amount to be determined at trial.

92.     More specifically, the actions and inactions of Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct and caused serious and substantial harm to the Plaintiff, resulting in significant and ongoing damages arising from the Incident at issue in this Complaint.

93.     Furthermore, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA have acted with such a conscious and flagrant disregard for the rights and safety of the Plaintiff, and/or have deliberately engaged in willful, wanton and reckless disregard for the life and safety of the Plaintiff so as to entitle them to punitive and exemplary damages in an amount sufficient to keep such wrongful conduct from being repeated.

94.     WHEREFORE, Plaintiff demands judgment against Defendants, Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, jointly and severally, for all actual and compensatory damages suffered, proximately caused by the Defendants' conduct, including but not limited to

a.  Past and future medical expenses and charges;

b.  Past and future physical pain and mental anguish;

c.  Past and future physical impairment;

d.  Past and future disfigurement;

e.  Past lost wages and future lost wage-earning capacity;

f.  Reasonable and proper compensation for any and all property damages incurred;

g.  Punitive damages in an  amount sufficient to keep such wrongful conduct from being repeated;

h.   Interest, if applicable, for all costs of this action;  a n d

i.  For any other such further relief as this Honorable  Court and/or jury may deem just and proper.

## **THIRD CLAIM FOR RELIEF**

## **Failure to Warn as to All Defendants**

95.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

96.    At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, as manufacturers of  t h e  Subject Vehicle and its driver's frontal airbag system, owed duties to warn of foreseeable dangerous conditions of the Subject Vehicle which would impair its safety.

97.    At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA knew or should have known that the Subject Vehicle's driver's frontal airbag system had an excessively energetic inflator and would deploy with excessive explosive force in foreseeable collisions, as well as expel shrapnel that could injure or kill occupants.

98.    At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA would have had and had no reason to believe that users

would realize this potential danger.

99.    At all times relevant herein, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA affirmatively failed to exercise reasonable care to inform users of the Subject Vehicle's dangerous condition created by the excessively energetic inflator in the driver's frontal airbag system or explosive nature of the inflator that could expel shrapnel.

100.    As a direct and proximate result of Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA's failure to warn of the dangers posed by the shrapnel and excessively energetic inflator in the driver's frontal airbag system in the Subject Vehicle and the breaches complained herein, Plaintiff Firooz suffered injuries including, but not limited to, excruciating pain and suffering, mental anguish, and emotional distress, from his accident on April 23, 2015.

101.    By reason of the foregoing, Plaintiff is entitled to recover for all general and special damages he sustained as a direct and proximate result of Defendants' grossly negligent, reckless, willful and wanton acts or omissions.

102.    In addition to the general and special damages suffered by the Plaintiff and proximately caused by the Defendants bad actions and inactions, as it concerns the defective operations and performance of the Subject Vehicle on April 23, 2015, and as previously alleged and set forth in this Complaint, Plaintiff also, as a further result of Defendants' reckless, willful, negligent and grossly negligent conduct, is entitled to recover punitive damages in accordance with the law and evidence in this case in an amount to be determined at trial.

103.    More specifically, the actions and inactions of Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct and caused serious and substantial harm to the Plaintiff, resulting in significant and ongoing damages arising from the Incident at issue in this Complaint.

104.    Furthermore, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA have acted with such a conscious and flagrant disregard for the rights and

safety of the Plaintiff, and/or have deliberately engaged in willful, wanton and reckless disregard for the life and safety of the Plaintiff so as to entitle them to punitive and exemplary damages in an amount sufficient to keep such wrongful conduct from being repeated.

105.   WHEREFORE, Plaintiff demands judgment against Defendants, Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, jointly and severally, for all actual and compensatory damages suffered, proximately caused by the Defendants' conduct, including but not limited to

     a.  Past and future medical expenses and charges;

     b.  Past and future physical pain and mental anguish;

     c.  Past and future physical impairment;

     d.  Past and future disfigurement;

     e.  Past lost wages and future lost wage-earning capacity;

     f.  Reasonable and proper compensation for any and all property damages incurred;

     g.  Punitive damages in an amount sufficient to keep such wrongful conduct from being repeated;

     h.  Interest, if applicable, for all costs of this action; and

     i.  For any other such further relief as this Honorable Court and/or jury may deem just and proper.

## FOURTH Claim for Relief

## Breach of Implied Warranties

106.   Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

107.   At all times relevant herein, Toyota is and was a "merchant" with respect to the Subject Vehicle at issue in this Complaint.

108.   At all times relevant herein, Toyota manufactured and sold the Subject Vehicle as a "good" within the meaning of the relevant statutory provisions.

109.    Consequently, at the time of its sale to Plaintiff, Toyota impliedly warranted that the Subject Vehicle was merchantable, including that it was fit for its ordinary purposes as safe passenger vehicles that it could pass without objection in the trade, and that it was adequately contained, packaged, and labeled.

110.    At all times relevant herein, Toyota breached the implied warranty of merchantability as it concerns Plaintiff because the Subject Vehicle was not fit for the ordinary purposes for which it was anticipated to be used—namely as a safe passenger motor vehicle.

111.    Specifically, the Subject Vehicle's driver's side airbag system was unreasonably dangerous and defective because it was designed, manufactured, and sold with a driver's side airbag inflator that had the propensity to explode with overly excessive force with deafening sound expelling multiple types of hot metal shrapnel in different shapes and sizes throughout the passenger compartment during air bag deployment in foreseeable collisions, including during the Incident on April 23, 2015, which made the Subject Vehicle unfit for its ordinary purpose of providing safe transportation.

112.    At all times relevant herein, Toyota further breached the implied warranty of merchantability to Plaintiff as the Subject Vehicle it designed, manufactured, and sold was equipped with a driver's side airbag inflator that will deploy with overly excessive force and deafening sound, expelling multiple types of hot metal shrapnel in different shapes and sizes throughout the passenger compartment during air bag deployment in foreseeable collisions, including during the Incident on April 23, 2015, and, therefore, it would not pass without objection in the trade.

113.    At all times relevant herein, Toyota further breached the implied warranty of merchantability to Plaintiff because the Subject Vehicle was not adequately packaged and labeled as the directions and warnings that accompanied the Subject Vehicle did not adequately instruct its owner on the proper use of the Subject Vehicle. Specifically, Toyota failed to provided adequate or reasonable warnings regarding the facts (i) that the driver's side airbag inflator had the propensity to explode with overly excessive force and deafening sound;

(ii) that the driver's side airbag inflator could and would expel multiple types of hot metal shrapnel in different shapes and sizes throughout the passenger compartment upon airbag deployment in foreseeable collisions; and (iii) that the driver's side airbag inflator could and would expel dangerous metal shrapnel to injure drivers or passengers, including, the Plaintiff, during foreseeable collisions such as the Incident of April 23, 2015.

114.    As a proximate result of Toyota's respective breaches of the implied warranty of merchantability, Plaintiff has suffered excessive property damages to the Subject Vehicle and Plaintiff has suffered serious and permanent injuries and scarring, excruciating pain and suffering, mental anguish, and emotional distress, as a result of the accident on April 23, 2015.

115.    By reason of the foregoing, Plaintiff is entitled to recover for all general and special damages proximately caused by Toyota's breaches of the implied warranty of merchantability arising and resulting from the Incident on April 23, 2015

116.    In addition to the general and special damages suffered by the Plaintiff and proximately caused by the Defendants bad actions and inactions, as it concerns the defective operations and performance of the Subject Vehicle on April 23, 2015, and as previously alleged and set forth in this Complaint, Plaintiff also, as a further result of Defendants' reckless, willful, negligent and grossly negligent conduct, is entitled to recover punitive damages in accordance with the law and evidence in this case in an amount to be determined at trial.

117.    More specifically, the actions and inactions of Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct and caused serious and substantial harm to the Plaintiff, resulting in significant and ongoing damages arising from the Incident at issue in this Complaint.

118.    Furthermore, Defendants Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA have acted with such a conscious and flagrant disregard for the rights and safety of the Plaintiff, and/or have deliberately engaged in willful, wanton and reckless disregard for the life and safety of the Plaintiff so as to entitle them to punitive and exemplary

damages in an amount sufficient to keep such wrongful conduct from being repeated.

119.    WHEREFORE, Plaintiff demands judgment against Defendants, Takata, TK Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA, jointly and severally,  for all actual and compensatory damages suffered, proximately caused by the Defendants' conduct, including but not limited to

    a.  Past and future medical expenses and charges;

    b.  Past and future physical pain and mental anguish;

    c.  Past and future physical impairment;

    d.  Past and future disfigurement;

    e.  Past lost wages and future lost wage-earning capacity;

    f.  Reasonable and proper compensation for any and all property damages incurred;

    g.  Punitive damages in an  amount sufficient to keep such wrongful conduct from being repeated;

    h.   Interest, if applicable, for all costs of this action; and

    i.  For any other such further relief as this Honorable  Court and/or jury may deem just and proper.

## FIFTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code §17200 Unfair Competition)

120.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

121.    At all times relevant herein, Defendants Takata, TK Holdings, and Toyota Defendants engaged in designing, testing, manufacturing, distributing, selling, and/or placing a defective and unreasonably dangerous product into the stream of commerce in conduct that was fraudulent, unfair and wrongful in violation of California Business & Professions Code §17200.

122.    At all times relevant herein, the subject Vehicle and its driver's side airbag system were defective and unreasonably dangerous as to its design, manufacture, distribution and warnings,

causing the Vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

123.     At all times relevant herein, all Defendants Takata, TK Holdings, and Toyota Defendants all took some part in the manufacture and sale of the subject Vehicle and its driver's side airbag system to Plaintiff.

124.     At all times relevant, the subject Vehicle was being used in an intended and/or foreseeable manner when the Incident alleged herein occurred.  Plaintiff neither misused nor materially altered the subject Vehicle, and upon information and belief, the subject Vehicle was in the same or substantially similar condition that it was in at the time of purchase.

125.     At all times relevant herein, the subject Vehicle is and was unreasonably dangerous and defective because it was designed, manufactured and sold with an excessively volatile inflator in the driver's side airbag system which deployed with dangerously excessive explosive force, exploded violently, and expelled sharp shrapnel during airbag deployment in foreseeable collision.

126.     At all times relevant herein, Defendants Takata, TK Holdings, and Toyota Defendants were aware of feasible alternative designs which would have minimized or eliminated altogether the risk of injury posed by the Vehicle and its driver's side airbag system.

127.     At all times relevant herein, Defendants Takata, TK Holdings, and Toyota Defendants had a duty to warn users of the dangers associated with by the Vehicle and its driver's side airbag system.

128.     At all times relevant herein, Defendants Takata, TK Holdings, and Toyota Defendants failed to warn of the inherent and latent defects that made this product dangerous and unsafe for its intended use.

129.     At all times relevant herein, Defendants Takata, TK Holdings, and Toyota Defendants failed to design, test, manufacture, inspect, and/or sell a product that was safe for its intended use.

130.    As a direct and proximate result of the Defendants, Takata, TK Holdings, and Toyota Defendants' negligence, failures, omissions, and breaches complained of herein, Plaintiff has incurred damages therefrom.

131.    The wrongful conduct of all Defendants, and each of them, was a substantial factor in causing the injuries and damages sustained by the Plaintiff.

132.    WHEREFORE, Plaintiff demands judgment against Defendants Takata, TK Holdings, and Toyota Defendants, jointly and severally, for all actual and compensatory damages he suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

## SIXTH CLAIM FOR RELIEF
### (Negligent Operation of Motor Vehicle)

133.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

134.    At all times relevant, Defendant Andres Liera Valenzuela ("Liera") owed Plaintiff a duty of due care to operate the Toyota vehicle which Defendant was driving in a manner consistent with applicable law and in a safe and cautious manner.

135.    Defendants breached that duty of care to Plaintiff by negligently causing Defendants' Toyota vehicle to collide with the vehicle driven by Plaintiff.

136.    As a result of the wrongful conduct of Defendants, Plaintiff was injured in the automobile accident, including fractures to the hip, legs and/or pelvic bones.  Plaintiff was hospitalized for an extended period of time and had to undergo painful physical therapy to be able to walk again.

137.    As a further injury resulting from the conduct of Defendants, and each of them, Plaintiff was unable to carry on his usual and customary work, was unable to engage in daily activities with his wife and family, and was unable to engage in other activities which he otherwise could

have enjoyed.

138.    Plaintiff continues to suffer pain and injury as a result of the Incident.

139.    The wrongful conduct of Defendants, and each of them, were a substantial factor in causing the injuries suffered by Plaintiff.

140.    This action was uploaded to the Court's electronic system and payment was processed by the federal payment system operated by the Court on April 24, 2017, a receipt for the payment being issued the same date.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows:

a.    For a trial by jury and judgment against Defendants Takata,  TK  Holdings,  Toyota, Toyota NA, Toyota U.S.A., TEMA,  and Andres Liera Valenzuela for such sums as actual and other compensatory damages, including but not limited to pain and suffering, permanent impairment, past and future medical expenses, past and future loss of function, past and future loss of earnings and enjoyment of life, and future prospective medical care costs in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

b.    For exemplary and punitive damages against Defendants Takata,  TK  Holdings, Toyota, Toyota NA, Toyota U.S.A., Premier, and TEMA in an amount as a jury may determine to halt such conduct;

c.    For the costs of this suit, including attorney's fees; and

d.    For  such  other  and  further  relief  to  which  they  may  be  entitled  and  as  this Honorable Court may deem just and proper.

///

///

///

### REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated:  April 28, 2017                                          Respectfully submitted,

**ANDREW RAUCH, APLC**


By: */s/ Andrew K. Rauch*
ANDREW K. RAUCH
Attorneys for Plaintiff DAVID FIROOZ
rauch@rauchapc.com